## 893

23 C.C.P.A.(Patents)

**In re ISOM.**

**Patent Appeal No. 3626.**

Court of Customs and Patent Appeals.

June 8, 1936.

Pennie, Davis, Marvin & Edmonds, of New York City (Raymond F. Adams and Louis D. Forward, both of New York City, and Clarence M. Fisher, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claim 6 in appellant's application for a reissue of his patent No. 1,708,180, issued April 9, 1929, on an application filed May 21, 1927.

The reissue application was filed June 30, 1931, approximately two years and two and one-half months subsequent to the issuance of appellant's patent.

Claim 6 reads as follows: "6. A hydrocarbon oil cracking process which comprises subjecting the oil to cracking conditions of temperature and superatmospheric pressure in a heating zone, discharging the heated oil into a vapor separating zone, removing vapors from said vapor separating zone and subjecting the same to primary and secondary dephlegmation thereby forming primary and secondary reflux condensates, *combining at least a portion of said primary reflux condensate with the oil being subjected to cracking conditions in said heating zone,* passing said secondary reflux condensate to a second heating zone independent of the first mentioned heating zone and there subjecting the same to cracking conditions of temperature and pressure, and then passing said secondary reflux condensate directly to said vapor separating zone without passage through said first mentioned heating zone." (Italics ours.)

Appellant's reissue application contained the four claims of his patent No. 1,708,180, and two new claims, 5 and 6, all of which were allowed, with the exception of claim 6.

There is a divergence of opinion between counsel for the parties relative to the grounds of rejection by the tribunals of the Patent Office.

We deem it unnecessary to extend this opinion by a statement of the complete history of the case. A sufficient statement thereof is included in the decision of the Board of Appeals, which, due to the divergence of views of counsel, we deem it necessary to quote:

"The reference relied upon is Morrell et al., 1,810,673, June 16, 1931.

"This case involves an application for reissue. It is pointed out by the examiner that the reissue application was filed more than two years after the granting of the original patent and that in his first action

he rejected claim 6 on the ground that the reissue oath does not satisfactorily show that failure to present claims of the scope of claim 6 arose through inadvertence, accident, or mistake, and that the oath did not disclose such circumstances as would excuse the delay of more than two years in presenting a broadened claim. It is argued by applicant that claim 6 was not in fact a broadened claim and the examiner thereafter allowed claim 6 and set up an interference between this application and the patent to Morrell et al, No. 1,810,673.

"Claim 6 of this application corresponded to claim 2 of the Morrell et al. patent. The patentee, Morrell, moved to dissolve on various grounds and also filed a disclaimer limiting the scope of claim 2. The Examiner of Interferences granted the motion to dissolve and held count 6 of the present reissue unpatentable to the present appellant. The further history of the case indicates that on appeal the Board of Appeals affirmed the Examiner of Interferences on the ground that there was no interference but did not rule on the patentability of the claim to the present applicant. The Examiner points out that this claim was held unpatentable by the Examiner of Interferences specifically on the ground that claim 6 was clearly broader than claim 3 of applicant's original patent and the examiner has adopted the views of the Examiner of Interferences in rejecting this claim.

"The subject matter of the claim involves a hydrocarbon oil cracking process which comprises the steps of heating oil to a cracking temperature in the tubes 5 and passing it to a vaporizing chamber 55, from thence the vaporized portion is carried to first and second reflux condensers 12 and 16. A portion of the first reflux condensate is returned through the connection 13 and 14 to the circulating body of oil. It also appears from the disclosure that part of the residual oil from the drum 55 is returned through the tube 8 to the heating tubes 5. The condensate from the second condenser is returned through a second heater 23 and from thence directly to the vaporizing chamber 55 without being passed through the first heating tubes 5.

"In the latter part of the claim it is stated that the secondary reflux condensate is passed directly to said vapor separating zone without passage through said first mentioned heating zone. It is the position of appellant that he has limited his claim here over the scope of the corresponding part of original claim 3 which did not require that the secondary condensate be returned directly to the vapor separating zone without passage through the first heating zone. It is our view that appellant is correct in respect to this portion being a narrowing and not a broadening of the claim.

"The part of the claim which is said to be broadened is that part which states, 'combining at least a portion of said primary reflux condensate with the oil being subjected to cracking conditions in said heating zone.' The corresponding limitation in claim 3 of appellant's original patent lies in the language, 'returning reflux condensate from the first refluxing operation to the oil circulating from said body of oil to said heating tubes.'

"Appellant has also challenged the holding of the Examiner of Interferences, which seems to have been adopted by the Principal Examiner, to the effect that claim 3 of the original patent requires the recirculation of liquid oil and can not reasonably be more broadly interpreted. While appellant's argument is to the effect that the return of the primary condensate would not theoretically have to be through the recirculation of liquid oil in a cycle of this sort, claim 3 of the original patent was limited to returning the condensate from the first reflux operation to the oil circulating from said body of oil to said heating tubes. The argument of the appellant as to the returning of the condensate to the oil whether liquid or vapor forms does not seem to be conclusive of the question here since the language of the present claim provides for combining 'a portion of said primary reflux condensate with the oil being subjected to cracking conditions in said heating zone.' It seems clear that the oil being subjected to cracking conditions in said heating zone would include the fresh stock being treated in the heating zone and is not limited to recycled oil to which claim 3 is clearly limited and that the present claim is, therefore, broad enough in this particular language to cover a returning of this primary condensate to other than the recirculated oil of the so-called clean and dirty circulation systems.

"The difficulty with appellant's position here is the limitation in the claims of his original patent, aside from the limited disclosure involved. While appellant has limited his claim with respect to the disposi-

tion of the condensate from the secondary condenser, that limitation applies to a portion of the field covered by either the claims of the original patent or broader claims, while the other language of the claim in question here as to the point of return of the primary condensate would tend to broaden the whole field or area beyond that covered by the scope of the claims of the original patent."

Counsel for appellant filed a request for a reconsideration and clarification of the Board's decision. In its decision denying the request, the Board said:

"Appellant states that in the original brief he attempted to point out that both original claim 3 of the parent Isom patent and claim 6, require reintroduction of the primary reflux condensate 'into recycled oil passing *from* the vapor separating chamber *to* the primary heating tubes.' We agree that original claim 3 requires this limitation, but do not agree that claim 6 requires such limitation. Our decision was not intended to mean either that claim 3 excluded an operation in which both fresh oil and recycled oil are subjected to cracking conditions in said heating zone or that claim 6 is limited to an operation in which the oil subjected to cracking conditions in said heating zone consists of fresh oil exclusively.

"It is our view that claim 6 is broad enough to cover the return of primary condensate to fresh oil which may be introduced directly into the primary heating tubes without said fresh stock being combined with the oil circulating *from* the body of oil *to* said heating tubes. In other words, the fresh stock may be introduced directly into the primary heating zone without being combined with the recycled oil (on its way) circulating *to* said heating tubes. The word, 'circulating', is in the present tense and is believed to limit original claim 3 to introducing the primary condensate into the recirculating oil during its passage to said heating tubes and not after it has entered said heating tubes. Claim 6 is not so limited."

It is true that in his decision the Primary Examiner stated that the appealed claim was rejected on two grounds; namely, that the applicant was not entitled to the claim, because his application was filed more than two years after the issuance of his patent, and that he was not entitled to make the claim, because his reissue oath failed to point out such inadvertence, accident, or mistake as would support the application for reissue.

As hereinbefore noted, in addition to the four claims of the original patent, claim 5 has been allowed.

The Solicitor for the Patent Office expressed the opinion that the Primary Examiner held that the oath of the applicant was insufficient to warrant the allowance of his reissue application, regardless of the scope of the rejected claim; whereas, counsel for appellant contend that it was the holding of the Primary Examiner, as well as of the Board of Appeals, that as appellant's reissue application was filed more than two years after the issuance of the patent, and because claim 6 is broader than the claims of the patent, his oath was not sufficient to warrant the allowance of claim 6.

It is conceded by counsel for appellant that if appealed claim 6 is broader than the claims of the patent, appellant's oath is insufficient to warrant the granting of the claim, in view of the settled law on the subject, which is fully set forth in the case of In re Kaser, 64 F.(2d) 687, 20 C.C.P.A. (Patents) 1035.

The pertinent part of section 4916, R. S. as amended by Act May 24, 1928 (35 U.S.C.A. § 64 [35 U.S.C.A. § 64]), the statutory authority for the reissue of a patent, reads: "Whenever any patent is wholly or partly inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a patent for the same invention, and in accordance with the corrected specification, to be reissued to the patentee or to his assigns or legal representatives, for the unexpired part of the term of the original patent."

It is clear from the statute that in order to entitle an applicant to a reissue of a patent it must be established that his patent was wholly or partly inoperative or invalid by reason of some inadvertence, accident, or mistake. Furthermore, after a lapse of two years after the issuance of a patent, a reissue application for claims broader than those contained in the patent will not

be granted, unless special circumstances are established to excuse the delay in filing such application. See In re Kaser, supra.

From a careful examination of the record, we are unable to agree with the Solicitor for the Patent Office that the Primary Examiner rejected the appealed claim on any ground other than that appellant failed to disclose special circumstances or reasons to excuse his delay in filing the reissue application for a broader claim. We think it is also clear from the quoted decision of the Board of Appeals that it held the same view. Accordingly, we are in agreement with counsel for appellant that the real issue before us is whether the Board of Appeals was right in holding that claim 6 is broader than the claims of the patent.

In its decision the Board compared allowed claim 3, one of the original claims of the patent, with appealed claim 6, and held that the latter claim was broader. Claim 3 reads: "3. A method of cracking hydrocarbon oils, comprising maintaining a body of oil at a cracking temperature by circulating oil from said body through heating tubes and back to said body and heating the oil to a cracking temperature in said heating tubes, taking off vapors from said body of oil and subjecting them successively to a first and second refluxing operation, *returning reflux condensate from the first refluxing operation to the oil circulating from said body of oil to said heating tubes,* forcing reflux condensate from the second refluxing operation once through a separate heating conduit and heating it therein to a cracking temperature, and discharging hot oil products from said heating conduit into said body of oil." (Italics ours.)

We have italicized those portions of appealed claim 6 and allowed claim 3, which have occasioned the involved controversy.

It is contended by counsel for appellant that the oil which is subjected to the cracking process in the heating tubes, as disclosed in the patent, does not consist exclusively of recycled oil, but rather includes a mixture of both fresh and recycled oil; that claim 3 of the patent and appealed claim 6, if construed in accordance with appellant's specification, "require reintroduction of the primary reflux condensate into recycled oil passing *from* the vapor separating chamber *to* the primary heating tubes"; that "in the cyclic processes of both the clean circulation type and the dirty circulation type it is customary to pass fresh oil through the primary heater *together with* the recycled oil, irrespective of whether the 'recycled oil' consists solely of condensed oils as in the clean circulation type of process, or of a mixture of condensed oil and unvaporized liquid residual oil as in the dirty circulation type of cracking process"; that claim 3 of the patent does not necessarily exclude the introduction of "fresh oil directly into the line leading to the inlet of the primary heating tubes, * * * although it does require that 're-cycled oil' of some form or other, derived from material that has passed through the vapor separating chamber, must *also* pass through the primary heating tubes"; and that neither claim 3 of the patent nor appealed claim 6 excludes the introduction of fresh oil into the line leading directly to the primary heating tubes.

It is true, as stated by the Board of Appeals, that the italicized language of claim 3 of the patent, "returning reflux condensate from the first refluxing operation to the oil circulating from said body of oil to said heating tubes," suggests that the reflux condensate is returned to, or mixed with, the oil which is circulating from the vapor separating chamber to the heating tubes; whereas, the italicized language of claim 6, "combining at least a portion of said primary reflux condensate with the oil being subjected to cracking conditions in said heating zone," suggests, in view of the teachings of the patent, that such primary reflux condensate may be mixed with fresh oil as well as the oil circulating from the vapor separating chamber to the heating tubes, and, to that extent, it might be argued that appealed claim 6 is broader than allowed claim 3. It is obvious, however, that in appellant's process the primary reflux condensate, the oil circulating from the vapor separating chamber into the primary heating tubes, and the fresh oil introduced into the system are, or may be, combined in the primary heating tubes. This being so, we are of opinion that the italicized language of claim 3 should not be so narrowly construed as to limit the process defined in that claim to a return of the reflux condensate to the *oil circulating only from the vapor separating chamber to the heating tubes,* or that the meaning of the italicized language of claim 6 should be extended to include in the process defined in that claim the return of the

primary reflux condensate, as stated by the Board, "to other than recirculated oil" from the vapor separating chamber.

We find nothing whatsoever in the patent nor in the claims here under consideration which necessarily precludes the introduction of fresh oil in the cycle disclosed by appellant at any point in the system. Accordingly, construing the italicized language of claims 3 and 6, in harmony with appellant's specification, we are inclined to the opinion that claim 6 does not "broaden the whole field or area beyond that covered by the scope of the claims of the original patent," as held by the Board of Appeals.

The Board having conceded that claim 6 is narrower in other respects than the claims of the patent, as it obviously is, we are constrained to disagree with its conclusion. Accordingly, for the reasons herein stated, the decision is reversed.

Reversed.